1  PETER D. KEISLER
   Assistant Attorney General
2  SCOTT N. SCHOOLS
   Acting United States Attorney
3  R. MICHAEL UNDERHILL
   Attorney in Charge, West Coast Office
4  Torts Branch, Civil Division
   U.S. Department of Justice
5  7-5395 Federal Bldg., Box 36028
   450 Golden Gate Avenue
6  San Francisco, California 94102-3463
   Telephone: (415) 436-6648
7  mike.underhill@usdoj.gov

8  ELLEN M. MAHAN
   Deputy Section Chief
9  Environmental Enforcement Section
   Environment and Natural Resources Division
10 U.S. Department of Justice

11 STEVE O'ROURKE
   Senior Attorney
12 Environmental Enforcement Section
   Environment and Natural Resources Division
13 U.S. Department of Justice
   P.O. Box 7611
14 Washington, D.C. 20044
   (202) 514-2779
15 steve.o'rourke@usdoj.gov

16 Attorneys for Plaintiff
   United States of America

17
                  UNITED STATES DISTRICT COURT
18
                  NORTHERN DISTRICT OF CALIFORNIA
19
   UNITED STATES OF AMERICA,          )   Civil No.
20                                     )
              Plaintiff,               )   IN ADMIRALTY
21                                     )
              v.                       )
22                                     )
   MARITIME   LOGISTICS,  INC.,  ALAN) VERIFIED COMPLAINT OF
23 CARPENTER  and  TRACY  RAGSDALE)        THE UNITED STATES
   CARPENTER, *in personam*, and M/V MICHAEL)
24 UHL, her engines, apparel, electronics, tackle,)
   aircraft, boats, appurtenances, *etc.*, *in rem*,)
25                                     )
              Defendants.              )
26 _____)

27

28 VERIFIED COMPLAINT                                          1

1    Plaintiff, the United States of America, alleges upon information and belief as follows:

2                              **NATURE OF THE ACTION**

3        1.        This is a case of admiralty and maritime jurisdiction, as hereinafter more fully

4    appears, and within Rule 9(h) of the Federal Rules of Civil Procedure, and, further, is an action

5    brought, as applicable, under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, *et seq.*, the

6    National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. §§ 1431, *et seq.*, and the Comprehensive

7    Environmental Response, Compensation National Marine Sanctuaries Act ("CERCLA"), 42 U.S.C.

8    §§ 9001, *et seq.*, for damages, removal, and response costs against Defendants MARITIME

9    LOGISTICS, INC. ("MARITIME LOGISTICS"), and ALAN CARPENTER and TRACY RAGS-

10   DALE CARPENTER ("CARPENTERS"), *in personam*, and M/V MICHAEL UHL, *in rem.*

11                            **JURISDICTION AND VENUE**

12       2.        The United States is authorized to bring this suit and the Court has jurisdiction

13   pursuant to 28 U.S.C. § 1345, 33 U.S.C. §§ 1321 and 2717, 42 U.S.C. §§ 9613(b) and 9613(e), and

14   16 U.S.C. §§ 1437 and 1443.

15       3.        Venue is properly in this Court pursuant to 28 U.S.C. §§ 1391 and 1395, 33 U.S.C.

16   § 2717, 42 U.S.C. § 9613(b), and 16 U.S.C. § 1443.

17                                    **DEFENDANTS**

18       4.        At all times material herein, defendant M/V MICHAEL UHL, her engines, apparel,

19   electronics, tackle, aircraft, boats, appurtenances, *etc.*, *in rem*, was a vessel registered in the United

20   States and is now or during the pendency of this action will be within the navigable waters of this

21   District and within the jurisdiction of this Honorable Court.

22       5.        At all times material herein, defendant MARITIME LOGISTICS was a California

23   corporation and had a place of business and/or was doing business within this district and within the

24   jurisdiction of this Court, including, but not limited to, through operation of M/V MICHAEL UHL

25   at the time of, and with respect to, the matters sued upon herein.

26       6.        At all times material herein, MARITIME LOGISTICS owned M/V MICHAEL UHL.

27

28   VERIFIED COMPLAINT                                                          2

1    7.    At all times material herein, MARITIME LOGISTICS operated M/V MICHAEL

2  UHL.

3    8.    At all times material herein, MARITIME LOGISTICS managed M/V MICHAEL

4  UHL.

5    9.    At all times material herein, MARITIME LOGISTICS chartered M/V MICHAEL

6  UHL.

7    10.    At all times material herein, MARITIME LOGISTICS controlled M/V MICHAEL

8  UHL.

9    11.    At all times material herein, P/C ALBION was a vessel subject to the laws of

10  the United States.

11    12.    At all times material herein, P/C ALBION was owned by defendants ALAN

12  CARPENTER and TRACY RAGSDALE CARPENTER.

13    13.    At all times material herein, defendant  ALAN CARPENTER was a resident

14  of the State of California and/or had a place of business and/or was doing business within this district

15  and within the jurisdiction of this Court, including, but not limited to, through the acts, sinking, and

16  subsequent events involving P/C ALBION that form the basis of this Complaint and action.

17    14.    At all times material herein, defendant TRACY RAGSDALE CARPENTER was a

18  resident of the State of California and/or had a place of business and/or was doing business within

19  this district and within the jurisdiction of this Court, including, but not limited to, through the acts,

20  sinking, and subsequent events involving P/C ALBION that form the basis of this Complaint and

21  action.

22    15.    At all times material herein, P/C ALBION was under tow by M/V MICHAEL UHL

23  as a "dead tow".

24    16.    At all times material herein, P/C ALBION, while under tow by M/V MICHAEL

25  UHL, was unmanned.

26    17.    At all times material herein, P/C ALBION, while under tow by M/V MICHAEL

27

28  VERIFIED COMPLAINT                                                          3

1  UHL, was not self-propelled.

2      18.    At all times material herein, P/C ALBION, while under tow by M/V MICHAEL

3  UHL as aforesaid, was operated by MARITIME LOGISTICS and M/V MICHAEL UHL.

4      19.    At all times material herein, P/C ALBION, while under tow by M/V MICHAEL

5  UHL as aforesaid, was managed by MARITIME LOGISTICS and M/V MICHAEL UHL.

6      20.    At all times material herein, P/C ALBION, while under tow by M/V MICHAEL

7  UHL as aforesaid, was controlled by MARITIME LOGISTICS and M/V MICHAEL UHL.

8      21.    At all times material herein, P/C ALBION, while under tow by M/V MICHAEL

9  UHL as aforesaid, was navigated by MARITIME LOGISTICS and M/V MICHAEL UHL.

10      22.    At all times material herein, and by reason of the matters alleged in this Complaint,

11  the CARPENTERS were "responsible parties" within the meaning of the Oil Pollution Act of 1990,

12  33 U.S.C. § 2701, *et seq.*

13      23.    At all times material herein, and by reason of the matters alleged in this Complaint,

14  Defendant MARITIME LOGISTICS was a "responsible party" within the meaning of the Oil

15  Pollution Act of 1990, 33 U.S.C. § 2701, *et seq.*

16      24.    At all times material herein, and by reason of the matters alleged in this Complaint,

17  the CARPENTERS were "responsible parties" within the meaning of the Comprehensive

18  Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601, *et. seq.*

19      25.    At all times material herein, and by reason of the matters alleged in this Complaint,

20  Defendant MARITIME LOGISTICS was a "responsible party" within the meaning of CERCLA, 42

21  U.S.C. § 9601, *et. seq.*

22      26.    At all times material herein, and by reason of the matters alleged in this Complaint,

23  Defendant M/V MICHAEL UHL was a "responsible party" within the meaning of CERCLA, 42

24  U.S.C. § 9601, *et. seq.*

25

26

27

28  VERIFIED COMPLAINT                                                              4

**THE OIL POLLUTION ACT OF 1990**

27.    The United States brings this action on behalf of the Oil Spill Liability Trust Fund (hereafter "Fund"), pursuant to OPA to recover any and all removal costs and damages incurred directly by the Fund, any removal costs and damages incurred by the Fund through compensation paid to any claimant, and all costs incurred by the Fund by reason of any such claims, including interest, prejudgment interest, adjudicative costs, and attorney's fees.

**THE NATIONAL MARINE SANCTUARIES ACT**

28.    The United States also brings this action on behalf of the Dept. Of Commerce, National Oceanic and Atmospheric Administration (NOAA), pursuant to the National Marine Sanctuaries Act ("NMSA") (formerly the Marine Protection, Research, and Sanctuaries Act), 16 U.S.C. §§ 1431, *et seq.*, for damages and other relief.

29.    Congress enacted the National Marine Sanctuaries Act ("NMSA") in order to recognize and protect certain areas of the marine environment that possess conservation, recreational, ecological, historical, scientific, educational, cultural, archeological, or esthetic qualities. 16 U.S.C. § 1431(a)(1) & (2).

30.    On September 18, 1992, the National Oceanic & Atmospheric Administration ("NOAA") established the Monterey Bay National Marine Sanctuary ("MBNMS") citing its "highly productive ecosystem;" "wide variety of marine habitat;" "highly diverse floral and fauna;" outstanding concentration of pinnipeds, whales, otters, and seabirds; and its "high water quality," among other attributes, as justification for its designation. 57 Fed. Reg. 43310; 16 U.S.C. § 1433. The President designated the Secretary of the Department of Commerce ("Department")  as the trustee of natural resources managed or controlled by the Department and that are found in or under waters navigable by deep draft vessels. 40 C.F.R. § 300.600(b)(1).

31.    Pursuant to Department Organization Order 25-5, the Secretary of the Department of Commerce delegated authority to administer the National Marine Sanctuary Program, including the MBNMS to the Under Secretary for Oceans and Atmosphere in NOAA.

32.     Under the NMSA, 16 U.S.C. § 1431, *et seq.*, any person who destroys, causes the loss of, or injures any sanctuary resource is liable to the United States for response costs and damages resulting from such destruction, loss, or injury. *Id.* at §1443(a)(1).

33.     The NMSA defines "sanctuary resource" as "any living or nonliving resource of a national marine sanctuary that contributes to the conservation, recreational, ecological, historical, educational, cultural, archaeological, scientific or aesthetic value of the sanctuary." *Id.* at § 1432(8).

34.     The NMSA defines "response costs" as "the costs of actions taken or authorized by the Secretary to minimize destruction or loss of, or injury to, sanctuary resources, or to minimize the imminent risks of such destruction, loss, or injury, including costs related to seizure, forfeiture, storage, or disposal arising from liability under Section 1443 of this title." *Id.* at § 1432(7).

35.     The NMSA defines "damages" as, *inter alia*: a) compensation for (i)(I) the cost of replacing, restoring, or acquiring the equivalent of a sanctuary resource, and; (II) the value of the lost use of a sanctuary resource pending its restoration or replacement or acquisition of an equivalent sanctuary resource; or (ii) the value of a sanctuary resource if the sanctuary resource cannot be restored or replaced or if the equivalent of such resource cannot be acquired; b) the cost of damage assessments; (c) the reasonable cost of monitoring appropriate to the injured, restored, or replaced resources; and (d) the cost of enforcement actions undertaken by the Secretary in response to the destruction or loss of, or injury to, a sanctuary resource. *Id.* at § 1432(6).

36.     The NMSA empowers the Secretary to request that the Attorney General commence a civil action for the recovery of response costs and damages from a party who has violated the Act. *Id.* at § 1443(c).

## CERCLA

37.     The United States also brings this action pursuant to CERCLA for damages and other relief.

//

**GENERAL ALLEGATIONS**

38.    In or about January of 2005, M/V MICHAEL UHL undertook and commenced the tow of P/C ALBION from a port in California. On information and belief, neither MARITIME LOGISTICS nor M/V MICHAEL UHL, nor persons acting for or on their behalf, undertook a pre-tow survey of P/C ALBION, nor did said parties require such a pre-tow survey of P/C ALBION as a condition of undertaking the tow.

39.    On or about January 31, 2005, P/C ALBION, while under tow by M/V MICHAEL UHL, sank in the waters of the Monterey Bay National Marine Sanctuary ("The Sanctuary"), said waters comprising waters subject to the NMSA, 16 U.S.C. §§ 1431, *et seq*., and also comprising navigable waters of the United States.

40.    The sinking of P/C ALBION, as aforesaid, posed a substantial threat of the discharge of oil into and upon the navigable waters and adjoining shorelines of the United States, with direct effect upon same and, moreover, actually caused the discharge of oil into and upon the navigable waters of the United States, with direct and continuing effects upon same. The said substantial threat of discharge and the actual discharge of oil are hereafter referred to as the "OPA Incident".

41.    The sinking of P/C ALBION, as aforesaid, caused the destruction of and/or caused the loss of and/or caused injury to The Sanctuary and its resources, with direct and continuing effects upon same, thereby resulting in, *inter alia*, response costs and damages as defined in the NMSA. The response costs and damages necessitated by the destruction and/or loss of and/or injury to The Sanctuary and its resources are hereafter referred to as the "Sanctuary Incident".

42.    The sinking of P/C ALBION, as aforesaid, posed a substantial threat of the release of a hazardous substance, *i.e.*, lead attached to portions of P/C ALBION's keel and/or hull, into navigable waters of the United States, with direct effect upon same. The said substantial threat of release of a hazardous substance is hereafter referred to as the "CERCLA Incident".

43.    The OPA Incident, the CERCLA Incident, and the Sanctuary Incident, unless referred to otherwise, collectively shall be referred to as the "Incident".

VERIFIED COMPLAINT                                                                    7

44.    The Incident was proximately caused, *inter alia*, by the acts, omissions, strict liability, fault, negligence, and breach of federal safety and operating regulations by Defendants, the vessels' owners, crew (in the case of M/V MICHAEL UHL) , agents, servants, employees, and others for whom Defendants were responsible, all within the privity and knowledge of the Defendants.

45.    Following the OPA Incident, the United States of America, by and through its various agencies and others acting on its behalf, responded and incurred OPA pollution removal costs and damages subject to the provisions of OPA.

46.    Following the Sanctuary Incident, the United States of America, by and through its various agencies and others acting on its behalf, responded and incurred response costs and damages subject to the provisions of the NMSA.

47.    Following the CERCLA Incident, the United States of America, by and through its various agencies and others acting on its behalf, responded and incurred CERCLA costs and damages subject to the provisions of CERCLA.

48.    The precise amount of OPA pollution removal costs and damages as a result of the OPA Incident presently amounts to approximately $1,207,063.57, with the exact amount of said damages to be established according to proof at the time of trial.

49.    The precise amount of response costs and damages sustained by the United States or that shall in the future be sustained as a result of the Sanctuary Incident presently is not known and shall be established according to proof at the time of trial.

50.    The precise amount of response costs and damages sustained by the United States as a result of the CERCLA Incident presently is not known and shall be established according to proof at the time of trial.

//

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST
## CARPENTERS AND MARITIME LOGISTICS
## (OIL POLLUTION ACT OF 1990)

51.     Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

52.     Pursuant to the Oil Pollution Act of 1990, each responsible party for a vessel from which oil is discharged, or which poses the substantial threat of discharge, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States, is strictly liable for all costs, damages, and/or disbursements specified in the Act.

53.     Under the circumstances herein, the CARPENTERS and MARITIME LOGISTICS are liable to the United States of America, without limitation, for all the aforesaid costs, damages, and/or disbursements sustained by the United States as a result of the OPA Incident.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST
## THE CARPENTERS AND MARITIME LOGISTICS
## (OIL POLLUTION ACT OF 1990)

54.     Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

55.     Pursuant to the Oil Pollution Act of 1990, the Fund shall be subrogated to all rights, claims and causes of action of claimants to whom it has paid compensation.

56.     As a result of the OPA Incident, the Fund may incur costs, damages, and/or disbursements by reason of claims for removal costs and damages brought against it under the Oil Pollution Act of 1990.

57.     Pursuant to the Oil Pollution Act of 1990, the CARPENTERS and MARITIME LOGISTICS are liable to the United States of America, without limitation, for all such costs, damages, and/or disbursements which may be sustained by the Fund.

//

VERIFIED COMPLAINT                                                                              9

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST
## THE CARPENTERS AND MARITIME LOGISTICS, *IN PERSONAM*, AND
## M/V MICHAEL UHL, *IN REM*
## (NATIONAL MARINE SANCTUARIES ACT)

58.    Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

59.    Pursuant to the NMSA, any person who destroys and/or causes the loss of and/or injures The Sanctuary and its resources are strictly liable for, *inter alia*, all damages, response costs, and interest thereon.

60.    Pursuant to the NMSA, vessels used to destroy and/or cause the loss of and/or injure The Sanctuary and its resources are strictly liable *in rem* and are subject to a maritime lien for all response costs, damages, and/or disbursements specified in the Act.

61.    As a direct and proximate result of the actions set forth in the United States' Complaint, Defendants are liable to the United States, without limitation, by virtue of the NMSA, 16 U.S.C. §§ 1437 and 1443, for all response costs and damages.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST
## THE CARPENTERS AND MARITIME LOGISTICS
## (NATIONAL MARINE SANCTUARIES ACT – INJUNCTIVE RELIEF)

62.    Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

63.    Pursuant to, *inter alia*, the NMSA, 16 U.S.C. § 1437(c), the United States has authority to seek injunctive and such other relief as may necessary against persons and entities subject to the NMSA.

64.    The United States seeks injunctive relief against the CARPENTERS and MARITIME LOGISTICS, said injunctive relief requiring said defendants to remove any and all portions of P/C ALBION from The Sanctuary and all navigable waters of the United States.

VERIFIED COMPLAINT                                                                10

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST
## THE CARPENTERS AND MARITIME LOGISTICS, *IN PERSONAM*, AND
## M/V MICHAEL UHL, *IN REM*
## (CERCLA RESPONSE COSTS)

65.    Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

66.    Pursuant to CERCLA, Responsible Parties, including owners and operators of vessels from which hazardous substances are released or which pose the substantial threat of release into the environment and/or navigable waters of the United States are strictly liable for all costs, damages, and/or disbursements specified in the Act.

67.    Pursuant to CERCLA, vessels from which hazardous substances are released or which pose the substantial threat of release into the environment and/or navigable waters of the United States are strictly liable *in rem* and are subject to a maritime lien for all costs, damages, and/or disbursements specified in the Act.

68.    As a direct and proximate result of the foregoing substantial threat of release of a hazardous substance, Defendants are liable, without limitation, to the United States by virtue of CERCLA for all response costs and damages.

WHEREFORE, the United States of America prays as follows:

1.    That United States of America be granted judgment against all Defendants, jointly and severally, pursuant to the Verified Complaint of the United States herein;

2.    That if defendants MARITIME LOGISTICS and the CARPENTERS cannot be found within this District, then, pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure, that all of any such absent defendant's property of any description, whatsoever, including other vessels or real property, located within this District be attached for up to the amounts sued for herein, and condemned and sold to pay the amounts due plaintiff herein;

3.    That actual notice of the commencement of this suit, in a manner approved by the

VERIFIED COMPLAINT                                                                 11

1    Court, be given to the custodian, master or other ranking officer of M/V MICHAEL UHL, as may

2    be applicable, and to any person, firm or corporation which has recorded a notice of claim of any

3    undischarged lien upon the said Vessel;

4           4.      That, pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and

5    Maritime Claims this Honorable Court enter an order authorizing a warrant for the arrest of M/V

6    MICHAEL UHL, her engines, tackle, appurtenances, etc.;

7           5.      That a warrant issue for the arrest of M/V MICHAEL UHL, her engines, tackle,

8    appurtenances, etc.;

9           6.      That judgment of condemnation and sale be entered against the M/V MICHAEL

10   UHL, her engines, tackle, appurtenances, etc.;

11          7.      That plaintiff United States of America be declared the holder of a valid preferred

12   maritime lien on the M/V MICHAEL UHL, in rem;

13          8.      That the M/V MICHAEL UHL be sold and the proceeds of the Vessel be applied first

14   to any judgments, costs, and expenses of the United States with respect to the complaint of the

15   United States herein;

16          9.      For such other relief as the Court deems just and proper in the premises.

17   Dated: October 9, 2007.

18

19                              PETER D. KEISLER
                                Assistant Attorney General
                                SCOTT N. SCHOOLS
20                              Acting United States Attorney

21

22                              _____
                                R. MICHAEL UNDERHILL
23                              Attorney In Charge, West Coast Office
                                Torts Branch, Civil Division
24                              U.S. Department of Justice

25   //
     //
26   //
     //
27

28   VERIFIED COMPLAINT                                                            12

1

2  ELLEN M MAHAN
   Deputy Section Chief
3  Environmental Enforcement Section
   Acting Assistant Attorney General
4  Environment and Natural Resources Division
   U.S. Department of Justice
5

6  STEVEN O'ROURKE
7  Senior Attorney
   Environmental Enforcement Section
8  Environment and Natural Resources Division
   U.S. Department of Justice
9

   Attorneys for Plaintiff
10 United States of America

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 VERIFIED COMPLAINT                                          13

1

VERIFICATION

2        R. Michael Underhill says:

3        I am one of the attorneys for plaintiff, United States of America, herein, and make this

4 verification by authority for and on its behalf; I have read the foregoing complaint, know the contents

5 thereof, and from information officially furnished to me believe the same to be true.

6        I verify under penalty of perjury, in accordance with 28 U.S.C. §1746, that the foregoing is

7 true and correct.

8        Dated: October 9, 2007.

9

10

11

12    _____

13        R. MICHAEL UNDERHILL

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28 VERIFIED COMPLAINT                                                                 14